Filed 9/2/20  P. v. Sansone CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>ADAM BRANDON SANSONE,<br><br>        Defendant and Appellant. | A159303<br><br>(Napa County<br>Super. Ct. No. 19CR001552) |

Adam Brandon Sansone appeals a sentence imposed after he pled no contest to a charge of second degree burglary pursuant to a plea bargain providing for a 16-month sentence. He contends that the trial court abused its discretion by denying his request to continue the sentencing to give him the opportunity to secure new evidence that might have enabled him to withdraw his plea. He also contends that the court erred in treating his 2006 conviction for assault (Pen. Code, § 245, subd. (a)(1))[1] as a strike which, pursuant to sections 667.5 and 1710.12, required him to serve the sentence in prison rather than in jail. We conclude that the court did not abuse its discretion in denying a continuance and that, because defense counsel expressly advised the court that the 2006 conviction made defendant

_____

[1] All statutory references are to the Penal Code unless otherwise indicated.

1

ineligible to serve his sentence in jail, the doctrine of invited error bars defendant's challenge to that aspect of his sentence. We shall thus affirm.

**Factual and Procedural History**

The operative second amended information charged defendant and Makayla Ann Slayton with felony first degree burglary (§ 459) and misdemeanor possession of burglary tools (§ 466). The information alleged as special circumstances that defendant had suffered a prior conviction of a serious or violent felony (§ 667.5; § 1170.12, subds. (a)–(d)), which was identified as "PC 245(a)(1) on 2/8/06, Sonoma County SCR #471770."[2]

On June 3, 2019, according to testimony at the preliminary hearing, a Napa County sheriff's deputy responding to a burglar alarm found defendant sitting in a car outside an untended vacant house in Calistoga; the deputy then saw Slayton leave the house carrying what proved to be papers (including the deed to the house), a prybar, and a methamphetamine pipe. Slayton told the deputy that the house belonged to defendant's recently deceased aunt (which proved to be untrue); that defendant needed to retrieve property from the house and to check for squatters; and that she and defendant entered through an unlocked back door, after which defendant had returned to the car. The deputy found evidence that the house had in fact been entered through a window pried open with the bar Slayton was carrying. Inside the car he found other burglary tools in a backpack.

According to probation reports, Slayton met with prosecutors the next day and told them that defendant had enlisted her in his plan to burglarize the house. Defendant's presentence report described a contrary account that he gave to the deputy and later repeated to the probation officer: he had asked

---

[2] The information also charged Slayton with misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)).

2

Slayton for a ride, during which he passed out; he awoke when the deputy approached the car; he never entered the house and knew nothing about, and played no part in, the burglary.

In September 2019, defendant moved to dismiss the information on the ground that the prosecutor had withheld impeachment evidence about Slayton's record, including a conviction for lying to law enforcement. The parties then stipulated to reopen the preliminary hearing.

On November 1, the date set for the preliminary hearing, defense counsel told the court that the parties had reached a plea bargain. The prosecutor would amend the information to add a fourth count of second degree burglary (§ 459), to which defendant would plead no contest in exchange for dismissal of the remaining counts and special-circumstance allegations. This exchange followed:

"THE COURT: Is this going to be a local or a state prison sentence?

"[DEPUTY DISTRICT ATTORNEY] FADEM: State prison sentence.

"THE COURT: It's based on the prior strike conviction or?

"MR. FADEM: Yes.

"[DEPUTY PUBLIC DEFENDER] SOLGA: Although the strike is being dismissed, so I think he's entitled to half time on this case. And the sentence doesn't get doubled because of dismissing the strike. I think it also makes it ineligible under 1170(h) for a local prison term.

"THE COURT: Right.

"MR. SOLGA: Okay.

"THE COURT: Are the parties asking for a [rule 4.412 presentence] report or do you want him sentenced today?

"MR. FADEM: I would ask for a 412 report, please.

3

"MR. SOLGA: And Mr. Sansone would like a little more time than [is] customary. . . . [M]id-December . . . would be his preference for sentencing.

"THE COURT: Any problem with that?

"MR. FADEM: No, your Honor, and I'll put on the record that we are moving to dismiss that strike prior and we are doing so for proof problems and a witness issue."

The court accepted defendant's plea, granted the motion to dismiss the remaining counts and special-circumstance allegations, and turned to setting a date for sentencing. The defense attorney, Mr. Solga, advised that a new deputy public defender would be taking over the case but would be out of the office the last two weeks of December, and asked if the hearing could be in the first week of January. When the court instead proposed December 13, Solga replied: "I'll be candid with the court. We are so close to a paper commitment,[3] that if Mr. Sansone could be sentenced in January he might avoid having to get processed through the prison. So that's why we're asking for more time." The court denied that request and set the sentencing hearing for December 13.

On December 6, the probation office submitted a presentence report describing, among other things, a December 3 interview in which defendant gave the above-described account of how Slayton had committed the burglary without his involvement. He stated that Slayton was a known liar whose story had changed repeatedly, that he felt he had been railroaded into an unfair plea bargain because he could not afford bail, and that he intended to

---

[3] By this, Solga meant that defendant would be sentenced to state prison, but his presentence credits would exhaust his term, and he would be released without ever being transferred from jail to prison.

talk with his attorney about withdrawing his plea or requesting a continuance so he could decide what to do.

At the December 13 hearing, after the court noted that it had read the probation report, defendant's new attorney moved to continue the sentencing to January 3 because defendant "has learned that there is a video recording of [Slayton] confessing that she lied to the district attorney's office and . . . the police about what happened in order to point the finger at him." Stating that she had not seen the video and had learned of its existence only the day before, the attorney asked the court to "continue the matter so that I can send an investigator to try to find this video and discuss the possibility with Mr. Sansone [of] withdrawing his plea."

The prosecutor opposed the motion, reminding the court of Mr. Solga's prior acknowledgment that defendant was "shooting for a paper commitment." Noting the lack of evidence that the video exists, the prosecutor expressed a belief that "this is simply a way to avoid being sent to state prison and put this out a little longer." Defense counsel responded that no one had asked her to try to achieve a "paper commitment" and that she was not "trying to . . . pull one over on the court." The court replied, "I don't think you are" and noted that a confession by Slayton that she had lied about defendant's role would be consistent with defendant's reported statement to the effect that he "wasn't as involved as the charges suggested." The court continued the sentencing hearing to January 3 to "give [defense counsel] a brief period of time to investigate that."

At the January 3 hearing, defense counsel stated that her office had contacted "a witness that said this video does exist, but she does not have it in her possession, but she's working on getting it." She said that the witness had stated that "[t]he person who took it is working on getting it off his

5

phone, and getting it to [the witness] so she can send it to [the] investigator." She asked the court to "put sentencing over for one more week to see if we can get our hands on that video."

The court denied the motion, stating that it had already continued sentencing once for that purpose and, "when I look at the factual scenario, I don't know if such a tape exists, or what impact it would have [if it does]." The court added that it had, by that time, taken Slayton's plea, which had "given me the opportunity to read the actual scenario in this case," and that it was "not prepared to continue the matter again." The court sentenced Sansone to 16 months in state prison, with credit for 215 days of time served and 214 days of conduct credit.

Defendant filed a timely notice of appeal "based on the sentence or other matters occurring after the plea that do not affect the validity of the plea," accompanied by a request for a certificate of probable cause, which described the events related to the denial of a second continuance. The trial court granted the request for a certificate.

## Discussion

*1. The court acted within its discretion in denying a continuance.*

The court may continue a criminal matter only upon a showing of good cause (§ 1050, subd. (a)), and the decision whether to do so " 'rests within the sound discretion' " of the trial court (*People v. Fuiava* (2012) 53 Cal.4th 622, 650). " 'The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked,' " for " 'discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered.' " (*Ibid.*) A trial court " 'may not exercise its discretion "so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." ' " (*Ibid.*)

6

Here, the court exercised its discretion thoughtfully. When defense counsel first requested a continuance, the court independently noted how the rumored video could be consistent with defendant's reported statement about his role in the burglary, and it allowed the defense three weeks to investigate. After those three weeks, defense counsel could report only that a witness who did not have the video had alleged that an unidentified person was "working" in an unspecified way on "getting it off his phone." Defense counsel offered no information about the person who allegedly had the video, why he had not been able to "get it off his phone," or when he might do so. Moreover, counsel was unable to indicate what the video revealed or that it was likely to warrant permission for defendant to withdraw his plea. Under those circumstances, the court acted within its discretion in denying a second continuance. Defense counsel's comments did not show that her office had acted diligently to secure the video during the initial continuance, and the court still did not know "if such a [video] exists, or what impact it would have [if it did]."

Defendant points to the court's comment that taking Slayton's plea had given it "the opportunity to read the actual scenario in this case." In defendant's view, this reference to the "actual scenario" indicated that the court believed that the probation report definitively established what actually happened during the burglary. Defendant implies that, because the court believed that it knew the "actual scenario," it considered the veracity of Slayton's account immaterial. But the court's reference to the "actual scenario" does not indicate that it based its ruling on the belief that it knew what had "actually" happened, making further evidence immaterial. What the court had read, as it stated, was the presentence report, which summarized four different accounts of how the burglary transpired: the

sheriff's deputy's report; Slayton's statements to the district attorney's office; a statement allegedly made by an acquaintance of defendant that Slayton had given to the district attorney's office; and defendant's contrary statements to the deputy and the probation officer. The court's stated rationale for denying the second continuance was that defendant had failed, after one continuance, to show "if such a tape exists, or what impact it would have." This ruling did not exceed the bounds of reason or deny defendant a reasonable opportunity to withdraw his plea.[4]

2. *The doctrine of invited error bars Sansone's claim that the court erred in ordering him to serve his sentence in prison.*

Defendant contends that the court erred in ordering that he serve his sentence in prison rather than in jail. Although defendant has now served his full sentence, the parties agree the issue is not moot because, as a result of having been sentenced to prison rather than jail, he is now subject to ongoing postrelease community supervision (§ 3451, subd. (a)). (Cf. *People v. Valencia* (2014) 226 Cal.App.4th 326, 329 [service of entire term does not moot an appeal that may affect duration of probation or parole].)

Defendant contends that section 1170, subdivision (h) required the court, once it chose to treat his conviction for second degree burglary as a felony (see § 461, subd. (b)), to sentence him to jail unless he came within an exception set forth in section 1170, subdivision (h)(3). (See § 1170, subd. (h)(2) ["Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail . . ."].) One

---

[4] Defendant also argues that it would have been improper to deny a continuance based on the prosecutor's speculation that defendant's real goal was to cause delay so he could attain a "paper commitment." But in granting a three-week continuance on December 13, the court stated explicitly that it did not think this was defense counsel's purpose.

exception is for defendants with prior convictions for serious or violent felonies as defined by sections 1192.7 and 667.5. (§ 1170, subd. (h)(3).) While the information alleged that defendant had one such conviction, identified as "PC 245(a)(1) on 2/8/06, Sonoma County," the pre-2012 version of that statute encompassed both assault with a deadly weapon, which is a strike, and assault by means likely to cause great bodily injury, which is not. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.) A reference to a pre-2012 conviction under section 245, subdivision (a) is thus ambiguous as to whether the conviction constitutes a strike.[5] (*Ibid.*)

Here, the information did not state whether the 2006 conviction was for assault with a deadly weapon or for assault by means likely to cause great bodily injury and, as part of the plea bargain, the People dismissed the allegation that it constitutes a strike. Yet, as indicated above, when the court took defendant's plea and asked if his sentence would be for prison or jail, the prosecutor said "prison," the court asked, "based on the prior strike conviction?," the prosecutor said "yes," (See *People v. Delgado*, *supra*, 43 Cal.4th at p. 1065 ["if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense"].) But here, defense counsel expressly agreed with the prosecutor's statement that defendant must serve his sentence in prison because of his "prior strike conviction," and the court relied on that position as stated by both attorneys. Any error was an invited

---

[5] In 2012, the Legislature eliminated this problem by amending section 245 to move assault by means likely to cause great bodily injury to a new, distinct subdivision. (Stats. 2011, ch. 183, § 1; see also *People v Learnard* (2016) 4 Cal.App.5th 1117, 1121–1122 & fn. 7.)

error, for which defendant may not seek relief. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 389, p. 447.)

Defendant contends that the invited-error doctrine does not apply because section 1170, subdivision (h) required the court as a matter of law to sentence him to jail unless the state proved a disqualifying prior conviction. (See *People v. Clytus* (2012) 209 Cal.App.4th 1001, 1006 ["a trial court . . . has no discretion to send to prison a defendant whose criminal record and current felony convictions qualify for a county jail commitment under section 1170, subdivision (h)"], disapproved on other ground in *People v. Scott* (2014) 58 Cal.4th 1415, 1426.) An unauthorized sentence is not subject to harmless-error analysis and cannot be saved by the doctrines of waiver, estoppel, or even invited error. (*In re Birdwell* (1996) 50 Cal.App.4th 926, 930–931.)

However, a sentence is "unauthorized" only if it "could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) That is not true of defendant's sentence: Except for the representations of both trial attorneys, the record is silent as to whether defendant's 2006 conviction under section 245, subdivision (a)(1) was for assault with a deadly weapon or for assault by means likely to cause great bodily injury. The trial court was entitled to accept defense counsel's express confirmation that the conviction made defendant ineligible to serve his sentence in jail—presumably because the conviction was in fact for assault with a deadly weapon. Accordingly, there is no basis to conclude that the sentence was unauthorized.

## Disposition

The judgment is affirmed.

POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.